IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHARMAINE MCKISSICK-MELTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:16-CV-605 |
| NORTH CAROLINA CENTRAL UNIVERSITY, et al., | ) ) ) | |
| Defendant. | ) ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiff, Dr. Charmaine McKissick-Melton, is a faculty member at North Carolina Central University ("Central"). She has sued Central and the Board of Governors of the University of North Carolina, alleging that they denied her a promotion to chair of the School of Mass Communication because of gender discrimination and retaliation in violation of Title VII. Because the Court does not have subject matter jurisdiction over the claims against the Board, the Court will dismiss those claims. The Court will grant Central's motion to dismiss for failure to state a claim as to the gender discrimination claim because Dr. McKissick-Melton's allegations do not show a plausible claim for relief, but will deny the motion as to the retaliation claim because Dr. McKissick-Melton has alleged facts sufficient to show a prima facie case.

## I. Background Facts Alleged in the Complaint

Dr. McKissick-Melton, a female, has been a professor at Central since 2007. (Doc. 1 at ¶¶ 8, 28, 53). In January 2012, Central restructured several departments and created a new department called the Department of Mass Communication. (*Id.* at ¶ 33). In summer 2013, Central appointed Dr. McKissick-Melton as interim chair of the department. (*Id.* at ¶ 35). After the end of summer 2013, she met with Dr. Carlton Wilson, the dean of Central's College of Arts and Sciences, who promised that Central would offer her the position of permanent chair shortly. (*Id.* at ¶¶ 14, 36). Central did not offer her the position, (*id.* at ¶ 37), and by July 2014, Dr. McKissick-Melton "became concerned that Dr. Wilson had not appointed her as permanent Chair for discriminatory and otherwise unlawful reasons." (*Id.* at ¶ 39).

On July 1, 2014, Dr. McKissick-Melton spoke to Central's chancellor, Dr. Debra Saunders-White, about unspecified discriminatory conduct by Dean Wilson; Chancellor Saunders-White directed Dr. McKissick-Melton to address her concerns with Dean Wilson and the provost.[1] (*Id.* at ¶¶ 3, 40). Dr. McKissick-Melton "followed Dr. Saunders-White's instructions." (*Id.* at ¶ 41). Then, on July 14, 2014, Dr. McKissick-Melton learned from Dean Wilson that he had selected a male, Dr. Calvin Hall, to be the permanent department chair. (*Id.* at ¶ 42). Dr. McKissick-Melton alleges that she was "more qualified" than Dr. Hall and that the department "performed remarkably well" under her supervision. (*Id.* at ¶¶ 38, 44).

---

[1] The complaint does not state the provost's name. (*See* Doc. 1 at ¶ 40).

In early 2015, Dr. McKissick-Melton filed a charge with the Equal Employment Opportunity Commission, alleging that, in denying her the promotion, Central discriminated against her on the basis of sex and retaliated against her. (Doc. 9-2 at 1). The EEOC charge did not mention the Board or any actor other than Dean Wilson. (*Id.*). Apart from the failure to promote, the only conduct alleged is that "[i]n the past, Dean Wilson had displayed aggressive behavior towards me and another female colleagues [sic]." (*Id.*). The EEOC issued a right to sue letter to Dr. McKissick-Melton in March 2016. (Doc. 1-1).

In June 2016, Dr. McKissick-Melton filed this lawsuit against Central and the Board, alleging gender discrimination and retaliation and requesting monetary damages. (Doc. 1 at pp. 8-11). The defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. (Doc. 8).[2]

## II. Standard of review

In deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), courts apply the well-known standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must articulate facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*,

---

[2] The defendants also raised a statute of limitations defense but withdrew it in their reply brief. (Doc. 12 at 2 n.1).

556 U.S. at 678). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### III. Analysis

#### 1. Claims against the Board

The Court will dismiss all claims against the Board for lack of subject matter jurisdiction for the reasons stated in the order available at Document 14, pages 5-6, in *Cook v. North Carolina Central University*, No. 16-CV-87 (M.D.N.C. Aug. 11, 2016) (granting motion to dismiss in part and denying it in part).

#### 2. Discrimination claim

A plaintiff can prove that an adverse employment action was the product of discrimination either by producing direct evidence of discrimination or, where there is no direct evidence, using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), to raise an inference of discrimination. *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 780 (D. Md. 2010); *Janey v. N. Hess Sons, Inc.,* 268 F. Supp. 2d 616, 620-21 (D. Md. 2003) (citing *Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222, 1227-28 (4th Cir. 1998)). To set forth a *prima facie* case of discrimination for failure to promote under the *McDonnell Douglas* framework, a plaintiff must show that she: (1) is a member of a protected class; (2) applied for a position; (3) was qualified for the position; and (4) was rejected under circumstances giving rise to an inference of unlawful discrimination. *Evans v. Techs. Applications &*

4

*Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996). While the pleadings need not "contain specific facts establishing a prima facie case of discrimination" under the *McDonnell Douglas* framework, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *accord McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 586-87 (4th Cir. 2015) (upholding dismissal where the plaintiff did not allege any facts to support her claim that she was more qualified than other applicants and distinguishing *Swierkiewicz*, where the plaintiff alleged he was passed over for promotion despite twenty-six years of experience compared to the successful candidate's one year), *cert. denied*, 136 S. Ct. 1162 (2016).

Here, Dr. McKissick-Melton has not alleged any facts to support an inference of discrimination. She alleges that she "performed remarkably well" as the interim chair, (Doc. 1 at ¶ 38), that by July 2014, she "became concerned that Dean Wilson had not appointed her as permanent Chair for discriminatory and otherwise unlawful reasons," (*id.* at ¶ 39), and that she was "more qualified" for the permanent chair position than the person eventually chosen. (*Id.* at ¶ 44). She does not include any facts to support her conclusory claim that Central failed to appoint her for "discriminatory and otherwise unlawful reasons." (*See id.* at ¶ 39). Nor does she explain why she was "more qualified" than the person chosen as permanent department chair. (*See id.* at ¶ 44). While she alleges that gender discrimination occurred generally at Central, those allegations are also conclusory. (*See, e.g.*, *id.* at ¶ 32 ("Dr. Wilson has continuously created a hostile working environment for Plaintiff and her female co-workers.")). Dr. McKissick-Melton

5

does not allege any facts or events that describe specific instances of discrimination against herself or anyone else at Central or that create an inference of such discrimination. (*See id.* at ¶¶ 28-51).[3]

While the allegation that a male decision-maker promoted a male candidate to permanent chair instead of the female plaintiff "is *consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias." *See McCleary-Evans*, 780 F.3d at 586. Simply alleging that discrimination occurred is not adequate to plead a claim for discrimination, nor is it enough to simply allege that one is a member of a protected class who was denied a promotion in favor of someone outside her protected class. *Id.* at 588. These allegations do not establish a plausible claim for relief, *see Twombly*, 550 U.S. at 570, and the Court will dismiss the discrimination claim.

### 3. Retaliation claim

A plaintiff can prove retaliation, like discrimination, either by presenting direct and indirect evidence of retaliatory animus, or by establishing a prima facie case under the *McDonnell Douglas* burden-shifting framework. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Here, Dr. McKissick-Melton has not alleged any facts directly showing retaliation and she instead appears to contend she has alleged a prima

---

[3] These allegations are significantly more conclusory than in *Cook*, where the plaintiff stated a plausible claim of relief by alleging specific irregularities in the search process and specific facts showing that the plaintiff was more qualified than the candidate chosen. *See* No. 16-CV-87, Doc. 14 at 4 (M.D.N.C. Aug. 11, 2016) (order granting motion to dismiss in part and denying it in part).

6

facie case. (*See* Doc. 11 at 6). To establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (citation omitted). The defendants do not dispute that the alleged failure to promote was an adverse employment action, but they do assert that Dr. McKissick-Melton's allegations are insufficient to show any protected activity or an inference of causation. (Doc. 9 at 18).

As with a discrimination claim, to state a retaliation claim, a plaintiff does not have to allege detailed facts supporting each and every element of the prima facie case so long as the alleged facts establish a retaliation claim that is plausible. *See Johnson v. SGL Carbon, LLC*, No. 3:16-cv-136, 2016 WL 3514457, at *4 (W.D.N.C. June 27, 2016) ("In a retaliation claim, the plaintiff must allege sufficient facts to show that the defendant discriminated against Plaintiff because she complained of [gender] discrimination."); *Robertson v. Cree, Inc.*, No. 5:09-CV-189-H, 2010 WL 8983218, at *3 (E.D.N.C. Mar. 29, 2010).

Here, Dr. McKissick-Melton's allegations, taken as a whole, are sufficient to assert a plausible claim for retaliation. Dr. McKissick-Melton alleges that she served satisfactorily as interim chair and that Dean Wilson promised to give her the permanent position. (Doc. 1 at ¶¶ 36, 38-39). After roughly one year passed with no promotion, she became concerned that Dean Wilson had not given her the permanent position because of discrimination, and she expressed concerns about Dean Wilson's discriminatory conduct

7

to Chancellor Saunders-White on July 1, 2014. (*Id.* at ¶¶ 39-40). She then addressed those same concerns with Dean Wilson and the provost. (*Id.* at ¶¶ 40-41). On July 14, 2014, within two weeks of her complaints about discrimination and despite her satisfactory performance as interim chair and the promise of a permanent promotion, Dean Wilson told Dr. McKissick-Melton that he had selected Dr. Hall as permanent chair. (*Id.* at ¶¶ 36, 42). This timeline of events raises a plausible inference that Dr. McKissick-Melton's protected activity—her July complaints to the Central administrators—was the cause of the adverse employment action taken against her. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) (holding that timing can give rise to an inference of causation, and citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).

The defendants contend that the July 1 conversation was not protected activity because the "complaint does not state that [Dr. McKissick-Melton] specifically raised gender discrimination or any other kind of discrimination" at this meeting, and because "she does not specify . . . that she ever informed Dean Wilson of her complaint of discrimination." (Doc. 9 at 20-21). These contentions are without merit. Dr. McKissick-Melton alleged that she complained about discrimination by Dean Wilson to Chancellor Saunders-White on July 1, that she then addressed her concerns to Dean Wilson and the provost, and that "Dr. Wilson immediately retaliated against Plaintiff" by giving the permanent chair position to Dr. Hall. (Doc. 1 at ¶¶ 40-42). While the complaint does not allege the nature of the purported discrimination or the specifics of these conversations, and while Dr. McKissick-Melton will need more detailed proof to prevail, one can draw

8

the plausible inference from the allegations as a whole that Dr. McKissick-Melton complained to Chancellor Saunders-White and Dean Wilson about gender discrimination and that as a result, Dean Wilson promoted a man to permanent chair.

### 4. Other claims

To the extent the complaint alleges a hostile work environment based on gender discrimination, (Doc. 1 at ¶ 32), Dr. McKissick-Melton bases that claim on conclusory allegations. The Court will dismiss any hostile work environment claim for the reasons stated in the order at Document 14, page 7, in *Cook*, No. 16-CV-87.

It is **ORDERED** that the defendants' motion to dismiss, (Doc. 8), is granted in part and denied in part as follows:

1. The motion to dismiss Dr. McKissick-Melton's claims against North Carolina Central University for retaliation is **DENIED.** The motion to dismiss Dr. McKissick-Melton's other claims against Central is **GRANTED.**
2. The motion to dismiss is **GRANTED** as to all claims against the Board of Governors of the University of North Carolina.
3. The case will proceed against Central on the retaliation claim and all other claims are **DISMISSED.**

This the 17th day of November, 2016.

_____
UNITED STATES DISTRICT JUDGE

9

Case 1:16-cv-00605-CCE-LPA   Document 13   Filed 11/17/16   Page 9 of 9